**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

OPEN ACCESS FOR ALL, INC.,
and ANDRES GOMEZ,

      Plaintiffs,

vs.

DEEL SALES, LLC,

      Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff Open Access For All, Inc. and Plaintiff Andres Gomez, by and through their undersigned counsel hereby file this Complaint and sue Defendant Deel Sales, LLC  ("Defendant") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

### INTRODUCTORY STATEMENT

1.     Plaintiff Open Access for All, Inc. and Plaintiff Andres Gomez (referenced collectively as "Plaintiffs") bring this action in Federal Court to stop the exclusion of blind, vision impaired, and low vision patrons of Defendant's business.

2.      Businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of Discrimination**.

3.      When businesses offer services that are inaccessible and then do not notice the public that those services are inaccessible, those business owners are not only marginalizing the visually impaired community but are actively excluding those members of the public who are visually impaired from their business.

4.      This case arises out of the fact that Defendant has operated its business in a manner and way that effectively excludes individuals who are visually impaired from access to Defendant's business.

5.      Defendant owns and operates a place of public accommodation which is an auto dealership and auto repair business ("dealership") under the brand name "Deel Volvo."

6.      Defendant's Deel Volvo offers new and used automobiles and repair services to the public, which are heretofore referenced as "products and services."

7.      This complaint seeks declaratory and injunctive relief to have Defendant update its policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's Website) so that individuals who are blind or visually impaired can communicate with Defendant effectively and timely such that their access to Defendant's auto dealership (a place of public accommodation) is not impeded; as such impediment has rendered Defendant's physical dealership location not fully accessible to the visually impaired.

## JURISDICTION & VENUE

8.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

9.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, Defendant's dealership is located in the district. In addition, the Defendant is authorized to conduct business within the state of Florida as a Florida limited liability company.

10.     Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

### Open Access For All, Inc.

11.     Plaintiff Open Access For All, Inc. (also referenced as "Plaintiff Open Access", "Open Access," or jointly with Plaintiff Andres Gomez as "Plaintiffs") is a membership civil rights non-profit corporation formed under the laws of the State of Florida which maintains its principal office within this district.

12.     Open Access members include individuals who are substantially limited in the major life activities of seeing/sight.

13.     Open Access advocates, *inter alia*, for the full and equal participation of its members in all aspects of society.  Open Access is devoted to the goal of full

inclusion, equality, and civil rights for its members, who are blind or visually impaired and whose lives are directly affected by loss of sight. Open Access' work is based on a close association with its members.

14.     Open Access members include individuals who are substantially limited in the major life activity of sight. Open Access members utilize screen reader software, which when utilized allows individuals who are visually impaired to communicate with internet websites.

15.     One or more of Open Access members have tried and have been unable to access and comprehend the Defendant's Website and have standing to bring suit in their own right to sue Defendant.   One or more of Open Access members have been discriminated against as they have been deterred from (and have been denied the opportunity to) participate and benefit from the goods, services, privileges, advantages, facilities and accommodations at Defendant's property equal to that afforded to other individuals. One or more of Open Access members have a well-grounded belief that any attempt to visit Defendant's property free of discrimination would be a futile gesture.

16.     Open Access members have a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations contained within this Complaint. Open Access members have reasonable grounds to believe that they will continue to be subjected to discrimination in violation of the ADA by the Defendant.

17.     Accordingly, the interests that Plaintiff Open Access seeks to protect through this litigation are germane to its mission and purpose.

**Andres Gomez**

18.     Plaintiff Andres Gomez (also referenced as "Plaintiff Gomez" or jointly with Plaintiff Open Access as "Plaintiffs") is a resident of the State of Florida, and he resides within this judicial district.

19.     Plaintiff Gomez is substantially limited in the major life activity of sight/seeing and is an Open Access member.

20.     Plaintiff Gomez is an otherwise qualified or qualified individual with a disability in that he is qualified to access Defendant's Website.

**Deel Sales, LLC**

21.     Defendant Deel Sales, LLC is the owner and operator of an automobile dealership under the brand name "Deel Volvo." Defendant Deel Sales, LLC owns and/or operates the Deel Volvo automobile dealership in South Florida.

**FACTS**

22.     Defendant's Deel Volvo auto dealership sells new and used automobiles, parts and accessories and is open to the public and is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation as an "other service establishment" as defined by 42 U.S.C. §12181(7)(E); §12182, and 28 C.F.R. Part 36. Defendant's Deel Volvo auto dealership is also referenced throughout as a "Place of Public Accommodation," "dealership," or "Deel Volvo dealership."

23.     Defendant's dealership also contains automobile service facilities which repair automobiles, and as such is also defined as a place of public accommodation as an "other service establishment" under 42 U.S.C. §12181(7)(F).

24.     Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates an automobile dealership and automotive service center as defined under 42 U.S.C. §§s 12181(7)(E) & (F).

25.     Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.deelvolvo.net ("Website").

26.     Defendant's Website is offered by Defendant as an electronic on-line auto dealership which permits the public to obtain information on Volvo (brand) new automobile, various brands of used automobiles (products) and automotive repair (services); heretofore, "products and services."  From the Website the public can find out the inventory of new and used automobiles in Defendant's automobile showroom and used car lot, become pre-approved for an auto loan, use the online payment calculator, schedule a test drive or appointment for automobile service and repair, can live chat with a sales representative, and other information Defendant is interested in communicating to the public.

27.     For all of the reasons as delineated herein, clearly, the Website is an integral part of the products and services offered by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §§s 12181(7)(E) & (F) of the ADA[1].

---

[1] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by

28.     Since, at all times material hereto, Defendant has owned and operated the Website and the Website is open through the internet to the public as part of its dealership and service/repair facilities, Defendant (as the owner/operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §§s 12181(7)(E) & (F) and 28 C.F.R. §36.104(2).  As such, Defendant has subjected itself and the Website it has created and maintains to the ADA.

29.     Plaintiff Gomez is an individual who is interested in purchasing an automobile and such as offered at Defendant's dealership located at 3650 Bird Road Miami Florida 33133.

30.     In March 2018, Plaintiff Gomez called Defendant to inquire the inventory of automobiles (styles, colors, packages for Volvo automobiles) at Defendant's dealership and becoming pre-qualified for an automobile loan. However, Defendant's representative failed to fully assist Plaintiff Gomez and referred him to its Website.

31.     After being disconnected by Defendant's representative, Plaintiff Gomez tried to interact and engage the Defendant through its Website to find out the styles, optional packages for those styles, available colors, and prices on the inventory of cars available at the 3650 Bird Road Miami Florida 33133 dealership (which Defendant's representative would not take the time to provide to him over the phone) in order to then make plans to travel to the dealership.

---

law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

32.     Due to his disability, the Plaintiff Gomez requires screen reader software to be able to participate in and receive the benefit of the Defendant's online (Website) content and electronic documents contained therein.

33.     When Plaintiff Gomez tried to interact and engage the Defendant through its Website, he encountered a Website that was not designed with accessibility (for the disabled) in mind.

34.     Defendant's Website is not designed with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website[2].

35.     Furthermore, Defendant's Website does not have the sign of website accessibility[3].

36.     Defendant has not provided any auxiliary aid or service which would assist Plaintiff Gomez and Open Access members and/or similarly situated blind or visually impaired members of the public to meaningfully access and comprehend Defendant's inventory of new and used automobiles, to become pre-approved for automobile financing, or to schedule a test drive or to schedule automobile repair service, as this information (and service) is available to the public through Defendant's Website.

37.     Defendant's Website was inaccessible so Plaintiff Gomez (and Open Access members) could not learn about the:

      a.   inventory of new and used automobiles,

---

[2]  "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design."  Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

[3] 

     b.   apply for an automobile loan and become pre-approved prior to coming to the dealership,

     c.   schedule an on-line chat regarding automobiles for sale,

     d.   schedule automobile service or repair.

38.     As such, Plaintiff Gomez and Open Access members have been denied access to Defendant's dealership and repair services since they are wholly unable obtain meaningful information regarding automobiles for sale and financing options (including applying for financing online).

39.     Like any other citizen, Plaintiff Gomez has been frustrated in his inability to understand the basic information about Defendant's automobile inventory and financing options.  Due to this frustration, Plaintiff Gomez has given up hope of going to Defendant's dealership.

40.     The fact that Plaintiff Gomez and Open Access members could not access the Website Defendant offered left them excluded from accessing the Defendant's products and services offered and further left Plaintiff Gomez and Open Access members with the feeling of segregation, rejection, isolation, and unable to participate in their own business affairs (such as purchasing a car and financing that car purchase) in a manner equal to that afforded to others who are not similarly disabled.

41.     This inability to participate in Defendant's products and services has resulted in a *virtual barrier* which has created an *effective barrier* to access to Defendant's dealership and repair services and to the products and services offered by Defendant.  Plaintiff Gomez and Open Access members' inability to fully use Defendant's Website has hindered, impeded and inhibited their future access to Defendant's physical dealership and automobile repair services.

42.     Plaintiff Gomez and Open Access members inability to communicate with/comprehend Defendant's Website has impeded their access to Defendant's the products and services which Defendant offers to the public and has impeded Plaintiff Gomez and Open Access members' ability to patronize Defendant's physical dealership location.

43.     Plaintiff Gomez and Open Access members continue to desire to patronize Defendant, but are unable to do so, as they are unable to obtain the information they require through the Website Defendant offers to the public.

44.     Since Plaintiff Gomez and Open Access members are disabled, they require as complete information as possible before arranging transportation and making a journey such as to Defendant's physical dealership location in order to become a customer (purchase an automobile or repair/service an automobile). As such, Plaintiff Gomez and Open Access members (and others with vision impairments) will suffer continuous and ongoing harm from Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

45.     On information and belief, Defendant has not initiated an ADA policy for effective communication to insure full and equal use of their business by individuals with disabilities.

46.     On information and belief, Defendant has not designated an employee as an Accessibility Coordinator to insure full and equal use of its electronic documents and Website (in general) by individuals with disabilities.

47.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

48.     On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its Website accessible to the visually impaired community.

49.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its electronic documents and Website (in general).

50.     On information and belief, Defendant has not offered any form of electronic documents in an accessible format for blind or visually impaired individuals.

51.     Thus, Defendant has not provided full and equal enjoyment of the goods and services provided at its dealership.

52.     All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

53.     On information and belief, Defendant is aware of the common access barriers and barriers to effective communication within its Website which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented by Defendant to the public.

54.     Defendant and alike automobile dealership and automotive repair centers are fully aware of need to provide full access to all visitors to its Website.[4]

55.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

56.     According to the National Federation for the Blind[5], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 486,400 individuals with visual disabilities living within the state of Florida[6].

57.     Plaintiff Gomez and Open Access members have no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices. No price can be put on Plaintiff Gomez and Open Access members' inability to investigate, compare and obtain products and services themselves.

58.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff Gomez and Open Access members is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

---

[4] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g.
(https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/),
(www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )
[5] See  https://nfb.org/blindness-statistics
[6] 486,400 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2015; see https://nfb.org/blindness-statistics

59.     Plaintiff Gomez and Plaintiff Open Access For All, Inc. have retained the civil rights law office of Scott R Dinin, P.A. and have agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

60.     Plaintiff Andres Gomez and Plaintiff Open Access For All, Inc. re-allege and incorporate by reference the allegations set forth herein above.

### Requirement for Effective Communication

61.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

62.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

63.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

64.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis

of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

65.     Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

66.     By virtue of the fact that Defendant's dealership is open to the public, it is a place of public accommodation pursuant to 42 U.S.C. §§s 12181(7)(E) & (F), it is subject to the requirements of Title III of the ADA, and the ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

67.     The virtual barrier to access is just as real as a physical barrier to access, for without information as to the products and services offered by Defendant's dealership and ability to investigate and choose an automobile dealership, the visually impaired have no access to Defendants dealership to purchase an automobile and to obtain financing for that purchase which Defendant's dealership offers to the public.

**The Website As A Place of Public Accommodation**

68.     Consistent with the text and legislative history of the ADA, the Department of Justice has long affirmed the application of Title III of the ADA to websites of public accommodations[7]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Banks, Inc.* No. 16-cv-23020 [DE #23].

---

[7] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at

69.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gil v Winn Dixie Banks, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Plaintiff v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

70.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

71.     The www.deelvolvo.net website is a *Place of Public Accommodation* pursuant to 42 U.S.C. §§s 12181(7)(E) & (F) as an integral part of Defendant's dealership by providing the public information on the physical location of the dealership and offers the public the ability to become educated as to the inventory of new and used automobiles

---

www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm 0(comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

Defendant offers, financing for those automobiles and auto repair services, and to schedule an appointment for a test drive or automobile repair/maintenance.

72.    In addition, Defendant's representatives within its dealership location have referred customers to Defendant's Website for additional information, as the Website provides information regarding its inventory of automobiles and financing terms such that the Website is an integral part of the public's needs with respect to Defendant's business.

73.    It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

74.    The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[8] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d, 574 (same)

---

[8] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

16

(D. Vt. 2015)[9] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd*, 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

75.     Recent case law supports that the intangible barriers presented within Defendant's Website are violative of the ADA.  In rendering his decision that Winn Dixie Banks, Inc.'s website contained barriers to access which are prohibited by the ADA[10], Judge Scola drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "**intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 (**emphasis added**).

76.     At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services. Plaintiffs' injuries are real, have occurred, and are continuing. Plaintiff Gomez and Open Access members' injuries will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

77.     Plaintiffs' position is further supported by recent case law which states that organizations which have not fully updated their websites to insure accessibility for

---

[9] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services
[10] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

the visually impaired are not immune to redress. See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

78.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

79.     Unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(b)(2)(A)(II).

80.     Unlawful discrimination also includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage,

or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(III).

**Barriers to Access**

81.     As a result of the inaccessibility of Defendant's Website to be accessible to visually impaired individuals, those visually impaired individuals are denied full and equal access to Defendant's physical dealership location and the online services as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

82.     Defendant's Website is not accessible to  users who are visually impaired such that visually impaired are unable to go to the Website and obtain the most perfunctory information such as what inventory of automobiles is available for purchase or lease, terms for financing such purchase (or lease), or how to pre-qualify for financing.

83.     Further, the Website does not offer include the universal symbol for the disabled[11] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

84.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic components to make its Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

---

[11]  ™, or HTML "Accessibility" link for those individuals who are visually impaired

**Violations of the ADA**

85.    The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's Website (in general). These violations are ongoing.

86.    As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

87.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Gomez and Open Access members injunctive relief; including an order to:

a)  Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the www.deelvolvo.net website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.deelvolvo.net website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website

for purposes of viewing and locating the Deel Volvo dealership (location) and becoming informed of Defendant's automobile inventory, financing options (lease and purchase), and automobile maintenance and repair services. During that time period prior to the Website being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from obtaining the products and services made available to the public through Defendant's Website and through Defendant's physical dealership location.

88.   Plaintiff Gomez and Open Access members have been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff Gomez and Open Access members are entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Deel Sales, LLC.

**<u>DEMAND FOR RELIEF</u>**

**WHEREFORE,** Plaintiff Andres Gomez and Plaintiff Open Access For All, Inc. hereby demand judgment against Defendant Deel Sales, LLC and requests the following injunctive and declaratory relief permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiff Gomez and Open Access members (and other individuals with visual impairments) equal access to, and benefit from Defendant's services, programs, activities and facilities, as well as:

a) The Court issue a declaratory judgment that Defendant has violated Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant to update its www.deelvolvo.net website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[12] and sign of website accessibility[13] (standard WCAG 2.0) within its Website.  Such a clear display is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.deelvolvo.net website;

d) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

e) The Court enter an order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

---

[12]



[13]

22

f) The Court enter an Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Website;

g) The Court award damages in an amount to be determined at trial;

h) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and

i) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 20th day of March, 2018.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*